UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                        Criminal Case No. 15-20709
                                        Honorable Linda V. Parker

v.

RAYMEL GREENE,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR RELEASE FROM CUSTODY UNDER 18 U.S.C. § 3582(c)(1)(A)

On December 9, 2015, Defendant pleaded guilty pursuant to a Rule 11 Plea Agreement to one count of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1).  On March 29, 2016, this Court sentenced Defendant to 120 months of incarceration, followed by a three-year term of supervised release.  (ECF No. 27.)  A Judgment was entered on March 31, 2016.  (*Id.*)  The matter is currently before the Court on Defendant's Renewed Motion for Release from Custody Under 18 U.S.C. § 3582(c)(1)(A).  (ECF No. 48.)  The matter has been fully briefed.  (ECF Nos. 51, 53.)

## Applicable Law

Under § 3582, a court may reduce a defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that a reduction is consistent with applicable statements issued by the Sentencing Commission[.]"  18 U.S.C. § 3582(c)(1)(A)(i).  The defendant bears the burden of proving that "extraordinary and compelling reasons" exist to justify release under the statute.  *See United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990) (concluding that the burden of proving facts that could decrease a potential sentence fall upon the defendant); *see also  United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.").  Here, Defendant seeks compassionate release citing the novel coronavirus (COVID-19) and his latent tuberculosis (TB), which he contends increases his risk of serious outcomes if he contracts the virus.

A defendant may move for compassionate release under § 3582(c)(1)(A) only after "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

2

§ 3582(c)(1)(A). This exhaustion requirement is mandatory. *United States v. Alam*, 960 F.3d 831, 832, 834 (6th Cir. 2020). There is no dispute that Defendant has administratively exhausted his request for release. (ECF No. 48 at Pg ID 418; ECF No. 51 at Pg ID 458.)

## Analysis

### Whether Extraordinary and Compelling Reasons Warrant Defendant's Release and Whether a Reduction is Consistent with the Sentencing Commission's Applicable Policy Statements

The Court finds that Defendant's medical condition and the conditions at his place of confinement due to COVID-19 present, in combination, extraordinary and compelling circumstances warranting a sentence reduction.

It is widely acknowledged, based on expert guidance, that there is a greater risk of COVID-19 infection for incarcerated individuals. The rapid spread of the virus is particularly likely in facilities where inmates sleep in open-dormitory style rooms and share bathrooms and eating areas, as is the case at the Federal Bureau of Prisons' Yazoo City Low facility, where Defendant is incarcerated. Two Yazoo City Low inmates have died after contracting COVID-19. https://www.bop.gov/coronavirus/ (last visited Aug. 6, 2020). The BOP reports that 96 inmates and nine staff members at the facility have contracted COVID-19. *Id.*

Nevertheless, only 175 inmates have been tested for the virus at the Yazoo City Low.  *Id.*  This represents only about 10% of the facility's inmate population.  *See* https://www.bop.gov/locations/institutions/yaz/ (last visited Aug. 6, 2020).  Because more than half of the prisoners tested at Yazoo City Low have tested positive for COVID-19, one can presume that the infection rate at the facility is in fact far higher than the BOP's reported numbers suggest.  *See Wilson v. Williams*, 961 F.3d 829, 849 (6th Cir. 2020) (Cole, C.J., concurring in part and dissenting in part) ("The flaws inherent in the half-measures employed by the BOP are amplified by the BOP's inability to test inmates for COVID-19.  At the time of the preliminary injunction, the BOP had only obtained 75 tests for roughly 2,500 inmates at Elkton. The fact that more than two-thirds of those tests came back positive suggests an extremely high infection rate, but the BOP's testing shortage ensured that the record would not reflect the precise figure.") (Cole, Chief J., concurring). Notably, Mississippi, where Yazoo City Low is located, is currently one of the hot beds for COVID-19 in the United States.  *See* https://www.nytimes.com/2020/08/06/world/coronavirus-covid-19.html (visited Aug. 6, 2020).

Several courts have found extraordinary conditions warranting release under § 3582(c)(1)(A)(i) based on the COVID-19 pandemic, coupled with an individual's pre-existing health conditions rendering the individual

4

vulnerable to severe complications from the virus. *See, e.g.*, *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020) (Lawson, J.) (citing cases); *United States v. Rahim*, No. 16-20433, 2020 WL 2604857, at *2 (E.D. Mich. May 21, 2020) (Edmunds, J.); *United States v. Loyd*, No. CR 15-20394-1, 2020 WL 2572275, at *2 (E.D. Mich. May 21, 2020) (Tarnow, J.) (citing cases); *United States v. White*, No. 13- CR-20653-1, 2020 WL 2557077, *5 (E.D. Mich. May 20, 2020) (Leitman, J.)*; United States v. Agomuoh*, No. 16-20196, 2020 WL 2526113, at *1 (E.D. Mich. May 18, 2020) (Levy, J.); *United States v. Pomante*, No. 19-20316, 2020 WL 2513095, at *5 (E.D. Mich. May 15, 2020) (Hood, C.J.). An inmate's medical condition, combined with the inability to practice social distancing in prison, diminishes the inmate's ability to "provide self-care" for his or her medical conditions, thereby satisfying the Sentencing Commission's statement as to when a reduction is appropriate. *See* U.S.S.G. § 1B1.13.

Shortly after his incarceration in March 2016, Defendant was diagnosed with an opacity in his right lung linked to a possible TB infection (Def.'s Mot. Ex. 2, ECF No. 48-3.) In January 2017, doctors confirmed a positive TB skin test and noted scarring on Defendant's right lung. (*Id.* Ex 3, ECF No. 48-4.) While Defendant underwent a successful 12-week prophylaxis treatment in 2017 (*id.* Ex. 4, ECF No. 48-5), he continues to suffer from latent TB. BOP medical staff have therefore ordered a yearly

5

chest x-ray to guard against reoccurrence. (*Id.*; *see also id.* Ex. 2, ECF No. 48-3.) Defendant also has a history of Stage 2 chronic kidney disease. (*Id.* Ex. 2, ECF No. 48-3.)

Because COVID-19 is a respiratory disease, *see* https://www.lung.org/lung-health-diseases/lung-disease-lookup/covid-19#:~:text=COVID%2D19%20is%20a%20lung,for%20severe%20disease%20than%20others (visited Aug. 7, 2020), and TB affects the lungs, scientists and health care professionals indicate that individuals who have had TB and recovered are still likely to be at higher risk of serious illness if they contract COVID-19. https://www.theunion.org/news-centre/covid19/covid-tb-faqs#five (visited Aug. 6, 2020.) Courts have released incarcerated individuals during the pandemic who suffer latent TB. *See, e.g., United States v. Watkins*, No. 15-20333, 2020 WL 4016097, at *3 (E.D. Mich. July 16, 2020); *United States v. Spencer*, No. 04 CR 1156, 2020 WL 3893610, at *5 (S.D.N.Y. July 10, 2020); *United States v. Barrenechea*, No. 92-cr-00403, 2020 WL 2315638, at *1 (N.D. Cal. May 7, 2020); *United States v. Johnson*, CR H-96-176, 2020 WL 3618682, at *2 (S.D. Tex. July 2, 2020); *United States v. Atwi*, No. 18-20607, 2020 WL 1910152, at *5 (E.D. Mich. Apr. 20, 2020); *Perez v. Wolf*, No. 19-cv-05191, 2020 WL 1865303, at *13 (N.D. Cal. Apr. 14, 2020); *Doe v. Barr*, No. 20-cv-02141, 2020 WL 1820667, at *5 (N.D. Cal. Apr. 12, 2020).

The Government maintains that latent TB does not place Defendant at increased risk if he contracts COVID-19 and that some of the cases he cites to argue that it does are distinguishable, as the inmates in those cases (*Atwi* and *Barrenchea*) had other, more critical underlying conditions. The Government argues that *Doe* and *Perez* are not persuasive, as they involved immigration detainees and thus the courts did not analyze whether certain medical conditions constitute extraordinary and compelling reasons under § 3582. According to the Government, Defendant's reliance on *Johnson* "is misplaced because circumstances other than the Defendant's medical conditions animated the result." (ECF No. 51 at Pg ID 465.) The Government contends that *Johnson* and *Barr* also are not persuasive, as the decisions rested on a questionable study. Instead, the Government maintains, the Court should look to the list of medical conditions the CDC recognizes as putting individuals at greater risk of severe illness from COVID-19, which does not currently include latent or active TB. *See* [https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html](https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html) (visited Aug. 7, 2020).

Regardless of whether the individuals seeking release in the cases Defendant cites were immigration detainees or convicted criminals or suffered serious medical conditions in addition to latent TB, the courts in those decisions found latent TB to be a condition that placed them at increased risk if they contracted the virus. This is the significance of those decisions here. That significance is not impacted by any distinctions in the standard applied to decide whether the inmate should be released.

As COVID-19 is a new and novel virus, its comorbidity with any medical condition, including latent TB, is far from understood. Notably, medical experts are continuously gaining insight as to how this new virus affects individuals with particular medical conditions and the list of underlying conditions exposing individuals to the risk of serious outcomes is evolving. Even the CDC acknowledges that "[w]e are learning more about COVID-19 every day"; and therefore, the CDC's own list of conditions supporting increased risk of severe illness has evolved during this pandemic. *See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (visited Aug. 6, 2020). Therefore, any scientific study—even perhaps one that reflects some weaknesses—provides guidance.[1]

---

[1] In Reply, Defendant provides two additional medical sources confirming the study's finding of "evidence that patients with Latent Tuberculosis

8

Moreover, at this point, there is no vaccine and the virus can cause severe complications or death. No one can seriously deny that the COVID-19 pandemic is extraordinary and unprecedented in modern times and that it poses a danger to everyone. Thus, as the court reasoned in *Atwi*:

> [R]egardless of whether latent TB can make a person more susceptible to catching COVID-19, if [petitioner] does catch it, the risks to someone with a co-infection of TB and COVID-19 "are readily apparent," as both are respiratory diseases that affect the lungs. The Court is not willing to take that risk.

2020 WL 1910152, at *5 (E.D. Mich. Apr. 20, 2020) (citing Max Bearak and Joanna Slater, "Among the most vulnerable to coronavirus: The tens of millions who carry HIV and tuberculosis," Washington Post, *https://wapo.st/2xBSNB5*).

For these reasons, the Court finds extraordinary and compelling circumstances warranting a reduction in Defendant's sentence.

### Whether the § 3553(a) Factors Favor Defendant's Release

Defendant "is not a danger to the safety of any other person or to the community" as required for compassionate release. *See* 28 U.S.C. § 3582(c)(1)(A) (providing that a reduction in sentence must be "consistent

---

Infection (LTBI) and Tuberculosis (TB) disease have … predisposition towards developing severe COVID-19 pneumonia." Yamini Marimuthu, et al., COVID-19 and tuberculosis: A mathematical model based forecasting in Delhi, India, 67 Indian Journal of Tuberculosis 177 (Apr. 2020); *see also* Matthew J. Saunders & Carlton A. Evans, COVID-19, tuberculosis, and poverty: preventing a perfect storm, European Respiratory Journal (2020).

9

with applicable policy statements issued by the Sentencing Commission"); U.S.S.G. § 1B1.13. Defendant scored as a career offender at sentencing because of drug convictions in 2009 (involving the distribution of marijuana) and in 2011 (involving the distribution of cocaine). (PSR ¶ 47.) While Defendant has a lengthy criminal history, most of his convictions—as the Government acknowledges (ECF No. 38 at Pg ID 144; ECF No. 51 at Pg ID 450)—are for driving with a suspended license. (PSR ¶¶ 29-44.) The Court is reluctant to conclude that such convictions reflect "an entrenched disrespect for the law[,]" as urged by the Government (ECF No. 51 at Pg ID 470), where the State regularly suspends the driver's licenses of individuals who lack the financial resources to pay fines and fees and where the use of a car is a vital means of transportation, as it is in Michigan. Except for an assault and battery conviction in 1997, when Defendant was 21 years old (*id.* ¶ 31), none of his prior convictions were for violent crimes. (*Id*. ¶¶ 29-44.)

The Government emphasizes that the individual to whom Defendant previously sold cocaine, which was the basis for his 2011 drug conviction, later died from an overdose. (*See* ECF No. 51 at Pg ID 447; PSR ¶ 44.) While the Court does not minimize Defendant's responsibility for the crime to which he pleaded guilty, it finds significant that an autopsy showed cocaine, opiates, and nordiazepam in the victim's blood. (PSR ¶ 44.) There is no indication that Defendant supplied the individual with the latter two

10

drugs or that he was aware that the individual was using them in combination with cocaine.

Moreover, as the Government conceded in response to a motion Defendant filed in November 2019, if Defendant were sentenced today, he might find relief warranting a reduction of his sentence under *United States v. Havis*, 927 F.3d 382, 386-86 (6th Cir. 2010). (ECF No. 32 at Pg ID 116.) Had Defendant not been sentenced as a career offender, he faced a guideline range of only 70 to 87 months. In any event, Defendant's 120-month sentence is actually 100 months with good time credit. He has served approximately 50% of his actual sentence of 8.3 years.

During his incarceration, Defendant has completed several programs to prepare him for success upon his release. He has only two disciplinary infractions and neither infraction suggests that he is a danger to the community if released. One infraction was for forgetting to sign a sign-out sheet. The second incident related to his possession of a cell phone in April 2019.

Defendant has significant support from his three brothers and his sister. (*See* PSR ¶¶ ; Def. Mot. Ex 5, ECF No. 48-6.) Defense counsel represents that, if released, Defendant can live with his brother, Tywan Bowles, in Flint, Michigan. (ECF No. 48 at Pg ID 432.) Defendant also is

the father of two children who he drove to and from school before his incarceration and cared for while their mother worked as a registered nurse.

Thus, the Court finds that extraordinary and compelling circumstances and the factors set forth in 18 U.S.C. § 3553(a) warrant a reduction of Defendant's sentence.

## Conclusion

For the foregoing reasons, the Court is **GRANTING** Defendant's request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Court reduces Defendant's sentence to time served as of August 17, 2020. The period of supervised release shall be extended to three years and six months, with the first six months to be served under 24-hour home incarceration.

Defendant shall be released no later than August 17, 2020, and shall reside at the residence of his brother, Tywan Bowles, in Flint, Michigan, where Defendant shall remain in self-quarantine for 14 days. Defendant shall notify the Probation Department for the Eastern District of Michigan within 24 hours of his arrival at his brother's residence and is directed to follow the instructions of the assigned probation officer.

Defendant's 24-hour home incarceration will be enforced by location monitoring, using technology to be determined by the Probation Department. All requests to leave the residence must be approved by the Probation

Department in advance. Upon his release from custody, Defendant will be subject to the same conditions of release imposed in his original sentence.

Upon entry of this Order, defense counsel shall immediately contact the Probation Department to coordinate and facilitate enforcement of Defendant's electronic monitoring and other release conditions.

**IT IS SO ORDERED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: August 10, 2020